CLEAR TELEVISION CABLE CORPORATION, PETITIONER-APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT-APPELLEE, NATIONAL VIDEO SYSTEMS, INC., INTERVENOR.

NATIONAL VIDEO SYSTEMS, INC., PETITIONER-APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT-APPELLEE, CLEAR TELEVISION CABLE CORPORATION, INTERVENOR.

Superior Court of New Jersey
Appellate Division

Argued June 7, 1978—Decided August 30, 1978.

Before Judges MATTHEWS, CRANE and ANTELL.

*Mr. Lewis J. Paper* argued the cause for appellant Clear Television Cable Corporation (*Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher,* attorneys; *Mr. Murray J. Laulicht,* of counsel).

*Mr. Francis R. Perkins* argued the cause for appellant National Video Systems, Inc. (*Messrs. Holzapfel & Perkins,* attorneys).

*Mr. Nielsen V. Lewis,* Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney

General of New Jersey; *Ms. Erminie Conley,* Deputy Attorney General, of counsel).

*Mr. William J. Linton* argued the cause for the Township of Dover (*Mr. Raymond A. Hayser,* Director of Law, attorney).

*Mr. John S. Pehlivanian* argued the cause for the Township of Berkeley (*Messrs. Lomell, Muccifori, Adler, Kearney, Ravaschiere & Amabile,* attorneys).

The opinion of the court was delivered by
ANTELL, J. A. D. These appeals involve competing applications under the Cable Television Act, *N. J. S. A.* 48:5A–1 *et seq.,* for certificates of approval to operate cable television systems in the beach areas of Dover Township and Berkeley Township in Ocean County. In *Clear Television Cable Corporation* [hereinafter "Clear"] *v. Board of Public Utility Commissioners* [hereinafter "Board"] Clear appeals from the denial of its application and the issuance of a certificate to National Video Systems, Inc. [hereinafter "National"]. In *National Video Systems, Inc. v. Board of Public Utility Commissioners,* National appeals from an earlier refusal of the Board to entertain its application under § 17(d)[1] of the act for a certificate of approval without municipal consents. This appeal presents a record of sprawling complexity and necessitates a detailed statement of the relevant legal and factual setting.

Under the Cable Television Act the privilege of operating a cable television (CATV) system is conditioned upon obtaining a certificate of approval from the Board. Where the applicant proposes to operate in a municipality where facilities are to be installed along public areas the certificate of approval cannot be granted without a municipal consent

---

[1]For convenience our references to the act will be by section numbers, omitting full citations of statutory titles and chapters.

being first issued by the municipal governing body. §§ 16(a) and 22. Upon submission of an application for municipal consent the governing body is obliged to publish notice of hearing thereon to be held within 60 to 90 days after filing of the application. § 23(b) and (c). Within 30 days after conclusion of the hearings the governing body is required to issue a written report of its decision to grant or deny the application. § 23.

An exception from the requirement of a municipal consent is provided for where the municipality "shall arbitrarily refuse to grant the municipal consent * * * or to act upon an application for such municipal consent within 90 days after such application is filed." § 17(d). Where such a showing is made "to the satisfaction of the board" the certificate may be issued without municipal consent.

The Board is also authorized, without municipal consent but on notice to the affected municipalities, to include within the certified area neighboring areas not covered in the application where it finds that the probable effect otherwise would be to impede the development of adequate cable television service either within or without the area for which certification is sought. § 17(b). We refer to this provision as the "regionalization" exception even though the term itself nowhere appears within the statutory language.

Since the action of the Board in awarding its certificate to National was based on regional considerations, the distinction between the beach areas and the mainland portions of the municipalities involved must be understood. The former are situated on the Island Beach Peninsula which, lying parallel to the mainland, is separated from the latter by Barnegat Bay. Also located on the Peninsula are the municipalities of Lavallette, Seaside Heights and Seaside Park. National was municipally enfranchised by ordinance to operate its system in these three localities between March and June 1971, a privilege which was "grandfathered" under §

17(f) of the act, which became effective December 15, 1972.[2]

The beach areas of Dover adjoin Lavallette on the north and south. The southern beach area of Dover, known as Ortley Beach, also adjoins Seaside Heights on the north. Seaside Park adjoins Seaside Heights on the south, and the beach area of Berkeley, known as South Seaside Park, adjoins Seaside Park at the southern extremity of these contiguous areas. It can be seen that National is already providing service in localities immediately adjacent to those for which certification is now sought.

Clear obtained its municipal consent from Berkeley Township in the form of an enfranchising ordinance on April 24, 1970, prior to the enactment of the Cable Television Act. Pursuant to the "grandfather" provision of the act, § 17(f), the Board, under Docket #735C–5007, issued its certificate of approval on November 1, 1973 for Clear to continue operating its system in the Berkeley areas then being serviced, and on May 29, 1974 the scope of approval was enlarged to include the entire township except for the beach areas thereof. The exclusion of the beach area was at the request of National, whose application to the Board for a certificate covering the beach areas of Dover and Berkeley Townships was, as we will shortly explain, made on April 25, 1974.

Clear obtained its municipal consent from Dover Township somewhat differently. On September 7, 1973 Crosswicks Industries filed its application with Dover Township for a municipal consent to operate a CATV system under § 22 of the act. Notice thereof was given, and within the statutory time limitation additional applications were filed by Clear. Na-

---

2This subsection requires the director to

* * * issue a certificate to any CATV company lawfully engaged in the construction, extension or operation of a CATV system on the effective date of this act, for the construction, extension or operation then being conducted. without further review, if application for such certificate is filed with the board within 90 days after such effective date.

tional and Greater Media, Inc. After hearings which were conducted between November 27 and December 26, 1973 the governing body passed its resolution dated January 22, 1974, and on May 28, 1974 adopted its ordinance, granting municipal consent to Clear to operate a CATV system throughout the entire municipality. Thereafter, on January 30, 1975 the Board, under Docket #746C–6028, issued Clear its certificate of approval, limited to the mainland portion of Dover Township and excluding from its terms, as in the case of Berkeley Township, the beach area.

Following Dover Township's resolution to grant municipal consent to Clear for the entire municipality, on February 28, 1974 National filed with the township a new application for municipal consent. This application was limited, however, to those portions of the township which were located on "the beach" and which were contiguous to the area already being served by National. It is clear that although the application was accepted for filing, the municipal governing body took none of the steps required to be taken by § 23 of the Act upon the filing of such application. It scheduled no hearing date, failed to publish notice of the receipt of the application, did not consider the application and made no decision as to whether the application should be granted.

On January 30, 1974 National presented its application to Berkeley Township for municipal consent to provide service in the beach portions only of that municipality. The application was submitted in accordance with § 23 of the act but was summarily rejected and filing was refused. The foregoing applications to Dover and Berkeley by National will be hereinafter referred to as the "beach proposals."

No further action was taken on the beach proposals until April 25, 1974 when National petitioned the Board under § 17(d) for a certificate of approval covering both municipalities on the ground that the governing bodies thereof had arbitrarily refused to grant the municipal consents and failed to act on the applications within the time periods prescribed by § 23. The matter was assigned Docket #744C–6019,

and by decision and order dated September 18, 1975 the Board concluded that the consents had not been arbitrarily refused and dismissed National's petition. In reaching its decision the Board reasoned that National's application constituted a "collateral attack" on Dover's January 22, 1974 resolution and Berkeley's ordinance of April 1970 giving consent to Clear, and was therefore barred by considerations of collateral estoppel and *res judicata*. Under the circumstances the townships were found to have "acted reasonably" in refusing to accept the application for filing in the one case and in refusing to act upon the application in the other. It was further found that the Cable Television Act did not impose an " 'absolute' statutory requirement that municipal hearings be conducted subsequent to every filing of an application to provide CATV service." National filed its notice of appeal on April 5, 1976 from this order and from a later order dated February 26, 1976 denying reconsideration.

Following the Board's disposition of National's § 17(d) arbitrary refusal hearing, Clear's still pending application to the Board under Docket #735C–5007 for approval to serve the Berkeley beach area and under Docket #746C–6028 to serve the Dover beach area was formally objected to by National, as permitted under § 16(b), and by decision and order dated July 8, 1976 the Board determined that hearings should be conducted to resolve "regionalization" issues under § 17(b) which it deemed to be presented. National's appeal from the Board's orders of September 18, 1975 and February 26, 1976 in the § 17(d) arbitrary refusal proceeding was thereupon stayed by the Appellate Division and is now before us for determination.

Hearings proceeded under § 17(b) in August and September 1976. National participated therein and presented, over Clear's objection, its "new proposal" to service the beach areas. This differed from what was submitted to Dover and Berkeley in 1973 and 1974 in that there were excluded from the new proposal live local origination and 35-channel

capacity. Naturally, this modification resulted in reduced anticipated operating costs and lower charges to customers. On November 30, 1976 the hearing examiner filed his report and recommendation which was adopted by the Board's decision and order of January 13, 1977. Concluding that National could deliver the service at a lower cost than Clear and that the evidence "does not substantiate Clear's contention that live local origination programming is a service that the public presently demands," the Board denied Clear's application for a certificate of approval and issued it to National. It should be noted that National's position in that proceeding was only that of an objector. From this action Clear filed its notice of appeal on March 1, 1977.

In granting the certificate to National the Board acted under § 17(b) of the act. This provision directs that

In considering any such application the board shall take into consideration the probable effects upon both the area for which certification is sought and neighboring areas not covered in the municipal consents; and if it finds that the probable effects, for technical and financial reasons, would be to impede the development of adequate cable television service, or create an unreasonable duplication of services likely to be detrimental to the development of adequate cable television service in any area either within or without the area for which certification is sought, it may deny the certificate or it may amend the certificate in issuing it so as to

(1) direct that areas covered in the application be excluded from the area certified, or

(2) direct that areas not covered in the application be included in the area certified.

In this instance the only application the Board could consider was that of Clear. No application by National was then pending before the Board. Indeed, it could not have submitted a § 17(a) application since it lacked the necessary municipal consents and the Board had already determined in the § 17(d) hearing that the consents had not been arbitrarily refused. To this the Board and National reply that National's application for the certificate to serve the other beach communities, i. e., Lavallette, Seaside Heights

and Seaside Park, which had been granted in 1971, remained a viable subject for Board reconsideration and that the requirement for an application is satisfied by reason thereof.

What this argument overlooks, however, is that the authority created in § 17(b) for the Board to deal with regional considerations by amending the certificate to include areas not covered in the application arises only when it is considering "any *such* application" (emphasis ours), an unmistakable reference to applications submitted under §§ 16(a) and 17(a) with their requirements for hearings and careful board scrutiny. National's application, on which its certificate for Lavallette, Seaside Heights and Seaside Park had previously been issued, was brought under § 17(f), the "grandfather" provision. The difference between the two forms of application is substantial, since under § 17(f) the certificate is issued by the director of the board "without further review." That the standards for approval were intended by the Legislature to be materially distinct is further reflected by the language of § 17(f). That subsection authorizes renewal of the five-year certificates issued thereunder, but specifies that applications for renewal must be considered "under the procedures specified in subsections a. through d. of this section." The authority provided under § 17(b)(2) to include geographical areas within a certificate not covered in the application is unavailable in the case of applications under § 17(f).

The Board's action in amending National's certificate is further defective in that it violated § 17(c) of the act. This section prohibits such amendments where they "would impair the terms of any existing certificate or of any municipal consent upon which such existing certificate is based." Here, although Clear's existing certificate covered only the mainland portions of Dover and Berkeley Townships, it was based upon municipal consents which covered the beach areas as well and would seem to be embraced by the foregoing sub-

section. But National and the Board argue, in effect, that the provision is intended to secure a municipal consent from impairment only to the extent that it is coextensive with the certificate of approval. We disagree, and observe that if this had been the legislative intent it would have been adequately served by limiting the protection against impairment only to existing certificates of approval without reference to the underlying municipal consents.

We conclude that the Board erred in granting the certificate of authority to National in the proceedings brought by Clear under Docket #735C–5007 and #746C–6028.

■ With respect to National's appeal from the Board's decisions and orders of September 18, 1975 and February 26, 1976 in the arbitrary refusal proceeding under § 17.(d), we conclude that the Board erred in deciding that National had not demonstrated its right to relief under that subsection. It is unecessary for us to express any opinion beyond stating that where the municipality refuses even to file the application, as in the case of Berkeley Township, or to act on it in any respect, as in the case of Dover Township, the resulting refusal to issue municipal consent cannot be considered anything other than arbitrary under the plain language of the statute. The consents previously issued to Clear were of a nonexclusive nature, the governing bodies were specifically authorized under § 23(e) to issue consents to more than one applicant, and there was therefore no statutory impediment to the application.

Additionally, the beach proposal submitted to Dover differed materially from what had been earlier considered since it was confined to serving only the beach portions of that municipality in areas contiguous to others already being served by National. The cost savings and other benefits which might have accrued to beach residents from the use of National's facilities instead of Clear's, which were located on the mainland across the Bay, could only have been ascertained after the proposals were studied. Public interests were paramount,

and it is not enough to say, as these municipalities do, that they were satisfied with the services already being provided by Clear.

We further conclude that the doctrines of *res judicata* and collateral estoppel did not bar National from submitting its beach proposals to Berkeley and Dover Townships. Assuming that these defenses could be raised in such a proceeding, they could not prevail under the circumstances. The doctrines cannot be asserted against one who was not a party to the earlier proceeding nor where the issue earlier adjudicated was not the same as that raised in the later proceeding. *Washington Tp. v. Gould,* 39 *N. J.* 527, 533 (1963) ; *Ettin v. Ava Truck Leasing, Inc.,* 100 *N. J. Super.* 515, 527 (App. Div. 1968), mod. on other grounds, 53 *N. J.* 463 (1969) ; 46 *Am. Jur.* 2d, *Judgments,* §§ 394, 407 (1969). National's beach proposal to Dover differed materially from what that township had originally considered in the 1973 hearings, and National had neither made a prior submission to Berkeley nor participated in the 1970 proceedings resulting in the passage of that municipality's ordinance which enfranchised Clear.

We recognize that our reading of the statute does little to discourage the making of successive applications by disappointed applicants. But this is not necessarily a fault. It has not been shown that such applications will always lack merit or that disappointed companies are likely to accept the trouble and expense of submitting merely vexatious applications. But, however one may feel about these probabilities, the clear and unambiguous language of the statute places no restriction thereon. If we were to accept the Board's argument that the decision of whether to consider such applications and initiate the statutory proceedings is discretionary with the governing body, then the chief protection built into the legislative scheme against corruption and the entrenchment of local favorites would be neutralized and the incentive for improved CATV service to the public which is encouraged by a continuing competitive relationship among rival CATV companies removed. While the suggestion

that a requirement for fixed minimum time intervals between successive applications may have merit, the enactment thereof lies outside the sphere of judicial competence.

Bearing in mind the length of time already consumed by these proceedings and the views favorable to National expressed by the Board in the § 17(b) regionalization hearing, we have studied the possibility of obviating further hearings on the remand which we find necessary in National's appeal from the Board's determination in the § 17(d) arbitrary refusal proceeding. We conclude, however, that further hearings, findings and conclusions by the Board are required. The proposal by National which was examined in the § 17(b) hearing differed in major respects from what National submitted to Dover Township on February 28, 1974 and to Berkeley Township on January 30, 1974. It is the proposal filed with the applications for municipal consent that the Board must consider in the pending § 17(d) hearing, and since the Board placed emphasis on the cost savings resulting from the § 17(b) proposal, which excluded live local origination and 35-channel capacity, we cannot assume its judgment would be the same in evaluating the earlier submissions.

In the appeal of Clear from the Board's decision and order of January 13, 1977, the Board's order under Docket #735C–5007 and #746C–6028 awarding the certificate of approval to National for the Dover and Berkeley Townships' beach areas is reversed, and to the extent that it denied Clear's application for the certificate of approval it is vacated. The matter is remanded to the Board for a determination upon the merits of Clear's application.

In the appeal of National from the Board's decision and Order under Docket #744C–6019, dated September 18, 1975, determining the municipal consents not to have been arbitrarily refused under § 17(d) of the act, the Board's order is reversed. The matter is remanded for a determination by the Board upon the merits of National's application for a certificate of authority based upon the beach proposals

which it filed with Dover Township and which it sought to file with Berkeley Township.

We are aware of no reason why these hearings may not be conducted by the Board on a consolidated basis.